```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```

```
J-LINE PUMP CO., INC. d/b/a  )
AMERICAN-MARSH PUMPS,        )
                             )
    Plaintiff,                )
                             )
v.                           )    No. 13-2842
                             )
MOHAN CHAND a/k/a RAMACHANDRAN )
M. CHAND,                    )
                             )
                             )
    Defendant.                )
                             )
                             )
```

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On September 27, 2013, Plaintiff American Marsh-Pumps ("AMP") filed a Complaint against Defendant Ramachandran M. Chand ("Chand") in the Chancery Court of Shelby County, Tennessee, for the Thirtieth Judicial District at Memphis. (Compl., ECF No. 1-1.) Plaintiff alleges that Chand breached his duties of loyalty, fidelity, care, competence, and diligence owed to AMP, which resulted in AMP's pleading guilty to making a false statement to the United States Government. (Id. ¶¶ 23-24.) Chand removed the case to this Court under 28 U.S.C. §§ 1441 and 1446. (Not. of Rem., ECF No. 1.)

Before the Court is Chand's November 1, 2013 Motion to Dismiss or, in the Alternative, for Summary Judgment (the

"Motion"). (Mot., ECF No. 7.) AMP responded on November 27, 2013. (Resp. to Mot., ECF No. 9.) Chand replied on December 9, 2013. (Reply, ECF No. 14.) Because the Court can determine the merits of the Motion on the Pleadings and the underlying documents to which they refer, the Court construes the Motion as a Motion to Dismiss. For the following reasons, the Motion is GRANTED.

**I. Background**

AMP markets, sells, and distributes industrial water pumps and accessories internationally. AMP alleges that Chand worked at AMP as Director of International Sales from May 1, 1996 to January 1, 2009. (Compl. ¶ 3.) In that position, Chand was allegedly responsible for all international sales made by AMP. (Id. ¶ 4.) Part of those responsibilities included ensuring that all international sales were done in strict compliance with all applicable laws, rules, and regulations. (Id. ¶ 5.)

On or about March 5, 2008, an Egyptian importer, Flowtech for Consulting & Engineering Works ("Flowtech"), ordered 12 large industrial pumps from AMP to use in a project on the Nile River. (Id. ¶ 12.) The total purchase price for the 12 pumps and related spare parts and services was $640,000.00. (Id.) AMP alleges that Chand assisted Flowtech in arranging funding for the purchase through USAID, the United States' leading international aid organization. (Id. ¶¶ 13, 15.)

2

USAID funded the pumps through its Commodity Import Program ("CIP"). As a condition for CIP funding, AMP was required to certify to USAID that the pumps met USAID's source and origin requirements. (Id.) Chand, who was not an officer of AMP, allegedly filled out the certification paperwork. (Id.) AMP alleges that Chand misrepresented to AMP his knowledge about USAID's sourcing requirements, incorrectly advising AMP's officers that the pumps were in compliance because 50% of their sales price was attributable to activities in the United States. (Id. ¶¶ 15, 16.) According to AMP, the pumps violated USAID's sourcing requirements because significant component parts were manufactured outside the United States. (Id. ¶ 15.) AMP's Vice President, Michael Florio ("Florio"), signed the sourcing certification on behalf of AMP, allegedly in reliance on Chand's representations. (Id. ¶ 17.)

On December 14, 2011, a federal grand jury indicted AMP and two of its corporate officers, Florio and James Rae, for making false representations to the United States Government (the "Indictment"). (Indict., ECF No. 7-3.) Chand is not mentioned in the Indictment. (See id.) AMP pled guilty to one count of making a false statement to the United States Government in violation of 18 U.S.C. § 1001, agreeing to a criminal forfeiture of $529,750. (Plea Agreement, ECF No. 7-5 at 2.) Terry

3

Kerbough ("Kerbough"), President of AMP, signed the Plea Agreement, which certified that:

> the individual signing . . . on behalf of AMP . . . has the power to bind the corporation and acknowledges that he has read [the] agreement, has discussed it with defendant's attorney and understands it.

(Id. at 3-4.) During the plea colloquy, the court heard the prosecution's case and what it would have proven at trial. (Plea Hearing, ECF No. 11-2 at 15.) The court inquired about AMP's understanding of the plea agreement and the voluntariness of the plea. (Id. at 36-37, 40.) The court asked Kerbough whether the charge was true: "and as far as the corporation is concerned the corporation was involved in the incident and admits it's [sic] involvement, its guilt?" Kerbough responded, "Yes, sir." (Id. at 35.)

AMP now seeks indemnification from Chand for AMP's criminal forfeiture and defense costs, in the amount of $895,645.33. (Compl. ¶ 25.)

II. **Jurisdiction and Choice of Law**

This Court has diversity jurisdiction under 28 U.S.C. § 1332. District courts have "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). AMP is a Tennessee Corporation with its principal place of business in

4

Collierville, Tennessee. (Compl. ¶ 1.) Chand is a California citizen. (Id. ¶ 2.) AMP seeks damages in the amount of $895,645.33. (Id. ¶ 25.) The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). When the parties agree that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis sua sponte. GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties agree that Tennessee substantive law applies. The Court will apply Tennessee substantive law to AMP's tort claims.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d

5

356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555).

Nonetheless, to survive a motion to dismiss, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

"[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial

Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335-36 (6th Cir. 2007). The Court "retains the discretion to consider or exclude [] extrinsic evidence presented with a Rule 12(b) motion." Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11-2987-STA-tmp, 2012 U.S. Dist. LEXIS 48976, at *13 (W.D. Tenn. Apr. 6, 2012), aff'd by, Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 12-5852, 2013 U.S. App. LEXIS 15879 (6th Cir. July 29, 2013). Because the Indictment, Plea Agreement and Plea Hearing are referenced in the pleadings and central to AMP's claims, the Court considers them in deciding the Motion to Dismiss.

## IV. Analysis

Chand argues that AMP has failed to state a claim for a tort violation because AMP is judicially estopped from arguing that Chand caused the injuries AMP alleges. AMP argues that Chand's alleged misrepresentations to Florio about USAID's source requirements resulted in Florio's falsely certifying on behalf of AMP that the pumps met the source requirements.

### A. Agent Liability

Under Tennessee law, agency negligence claims require:

> (1) A duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.

Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).

7

An agent's duty is "to be careful, skillful, diligent and loyal in the performance of his principal's business." Gay & Taylor, Inc. v. Am. Cas. Co. of Reading, Pa., 53 Tenn.App. 120, 213 (Tenn. Ct. App. 1963). The agent-principal relationship is "fiduciary in nature," obliging the agent to "make full and complete disclosure of facts that will benefit his principal." Marshall v. Sevier Cnty., 639 S.W.2d 440, 446 (Tenn. Ct. App. 1982) (quoting Heard et al. v. Miles, 32 Tenn.App. 410 (1949)). A "skilled agent" owes a duty to his principal:

> to act with the care, competence, and diligence normally exercised by agents in similar circumstances. Special skills or knowledge possessed by an agent are circumstances to be taken into account in determining whether an agent acted with due care and diligence. If an agent claims to possess special skills or knowledge, the agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents with such skills or knowledge.

Restatement (Third) Of Agency § 8.08 (2006). See also Gay & Taylor, 53 Tenn.App. at 123.

An agent breaches his duty "by exceeding [the agent's] authority or positive misconduct, or by negligence or omission in the proper function of his agency, or in any other manner." Marshall, 639 S.W.2d at 446 (citing Gay & Taylor, 53 Tenn.App. at 124).

When breach occurs, the agent is liable for damages "naturally and proximately flowing from the breach of duty."

Gay & Taylor, 53 Tenn.App. at 123-24. For the agent to be held liable, damages must be "fairly attributable" to the breach "as the natural result or just consequence" of it. Marshall, 639 S.W.2d at 446.

**B. Judicial Estoppel**

AMP is judicially estopped from claiming that Chand's alleged breach of fiduciary duties proximately caused AMP's injuries because AMP has admitted that it had actual knowledge of the falsity of its origin certification to USAID. See Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982). Judicial estoppel is a federal common law doctrine that a court may invoke to protect the integrity of the judicial process by preventing parties from cynically shifting positions to their advantage. New Hampshire v. Maine, 532 U.S. 742, 750 (2001); United States v. Renda, 709 F.3d 472, 486 (5th Cir. 2013). The doctrine:

> bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final adjudication.

Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002).

A guilty plea may satisfy the judicial acceptance requirement of judicial estoppel if the court addresses and accepts the party's position. See United States v. Hammon, 277 F.App'x 560, 567 (6th Cir. 2008) (citing Lowery v. Stovall, 92

F.3d 219, 224-25 (4th Cir. 1996)).  Several factors indicate whether a court accepts the admissions intrinsic to a plea bargain: (1) the trial court ensures the plea was understood and voluntarily made, (2) the trial court has a factual basis for finding the party guilty, and (3) the trial court is familiar with the prosecution's evidence.  See Lowery, 92 F.3d at 225.

Here, AMP is judicially estopped from arguing that it did not knowingly make false statements that resulted in the damages AMP alleges.  AMP entered a "voluntary plea of guilty" to making a false statement to the United States Government in violation of 18 U.S.C. § 1001.  (Plea Agreement, ECF No. 7-5 at 2.)  An element of that crime is that the false statement be made "knowingly and wilfully."  See § 1001(a).  By pleading guilty, AMP admitted that it knew that its sourcing certification to USAID was false.  See United States v. McCreary-Redd, 475 F.3d 718, 723 (6th Cir. 2007) ("[A] guilty plea is an admission of all elements of a formal criminal charge.").  AMP's representative also testified under oath before the sentencing court that AMP was guilty of the crime, which includes the willfulness element.  (Plea Hearing, ECF No. 11-2 at 35.)  The court accepted AMP's admission, had a factual basis for doing so, was familiar with the prosecution's evidence, and ensured that the plea was voluntary and understood.  (See id at 36-37.) AMP is bound to its admission.  Even if Chand negligently or

10

intentionally misled Florio and, by extension, AMP, AMP's intentional misrepresentation breaks any chain of causation arising from Chand's alleged fiduciary violations. See Marshall, 639 S.W.2d at 446.

Allowing AMP to contradict its admission would undermine the integrity of the judicial process. AMP cannot now justly shift responsibility to another to secure indemnification for the consequences of its crime.

**V.  Conclusion**

For the foregoing reasons, Chand's Motion to Dismiss is GRANTED. Chand's February 19, 2014 Motion for Joinder is DENIED as MOOT.

So ordered this 14th day of July, 2014.

s/ Samuel H. Mays, Jr.  
SAMUEL H. MAYS, JR.  
UNITED STATES DISTRICT JUDGE